UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
......................................................................... X
                                                                          :
                                                                          :
                                                                          :
UNITED STATES OF AMERICA,                        :    15 Cr. 109 (NRB)
                                                                          :
        -against-                                              :    ECF Case
                                                                          :
JOSE TORO NARANJO, ET AL.,                       :


......................................................................... X


# MEMORANDUM OF LAW IN SUPPORT OF
# A MOTION TO DISMISS OR, IN THE ALTERNATIVE,
# FOR A HEARING TO BE HELD AND FOR
# DISCLOSURE OF BRADY AND GIGLIO MATERIAL
# AND RULE 404(B) EVIDENCE


**ALEXEI SCHACHT**
**ATTORNEY AT LAW**

Alexei Schacht
123 West 94th Street
New York, New York 10025
(646) 729-8180
alexei@schachtlaw.net

*Attorney for Defendant Jose Toro Naranjo*

Table of Contents

Preliminary Statement                                                              2

The Case Must be Dismissed Because of the Government's
Outrageous Government Conduct                                                      2

The Government Should be Ordered to Turn
Over Brady and Giglio Material                                                     6

The Court Should Require the Government to Disclose
Any Evidence it Intends to Introduce Pursuant to Rule 404(b)
of the Federal Rules of Criminal Procedure                                         7

Conclusion                                                                         8

1

**PRELIMINARY STATEMENT**

The facts are simple. Victor Patino is an infamous violent informant for the DEA who was deported back to Colombia after serving a jail sentence in the United States. Patino, and his accomplice Doris Alzate, were owed money by the defendant. Because the defendant did not pay them they proposed a massive drug deal to him, one that would allow him to pay off the debt he owed. But the defendant was not himself at all capable of supplying the drugs required of him. But this drug deal was no real drug deal; rather, it was a way for Patino to get revenge on the defendant buy setting him up to be arrested.

While Patino and Alzate were arranging this deal as a way to get back at the defendant, the outrage is that the government agents knew that the informants were allowed by the agents to commit crimes and to do so with impunity, using their status as government informers as a shield. That Patino was back to his old criminal ways was an open and known fact in Colombia and certainly the DEA has known this as well. That the DEA has continued to protect Patino is obvious from the fact that he is not indicted in this case. The unique circumstances in this case, where the DEA protects a murderous informant and permits him to set up the defendant in order to get revenge for the defendant not paying a debt, constitute outrageous government conduct.

**I. THE CASE MUST BE DISMISSED BECAUSE OF THE GOVERNMENT'S OUTRAGEOUS GOVERNMENT CONDUCT**

The Supreme Court first recognized the defense of outrageous government conduct in *United States v. Russell*, 411 U.S. 423 (1973), where it held that there might be situations "in which the conduct of law enforcement officials is so outrageous that due process

principles would absolutely bar the Government from invoking judicial process to obtain a conviction." *Id.* at 431-32.

While there is no clear test for determining when the Government's behavior reaches the level of outrageousness to constitute a due process violation, a review of cases from different courts reveals some of the many fact patterns that give rise to this defense. *See e.g., Greene v. United States*, 454 F.2d 783, 785-87 (9th Cir.1971)(dismissing indictment where the government agent "helped first to reestablish, and then to sustain, criminal operations which had ceased" before his involvement); *United States v. Twigg*, 588 F.2d 373, 380-81 (3d Cir. 1978)(dismissing indictment where government informant proposed crime, provided necessary expertise, and assistance defendants provided was minimal and at the specific direction of the informant); *United States v. Batres-Santolino*, 521 F.SUpp.744, 748-51 (N.D.Cal. 1981)(dismissing the indictment where "government agents 'manufactured a crime that … could not and would not have been committed if [the informant] had not inveigled defendants into it and offered to provide them with an otherwise unavailable source of supply of the illegal drugs they were to import").

Outrageous government conduct is not even really a defense, but rather a claim that government some conduct in securing an indictment is so shocking to due process values that the indictment must be dismissed. *United States v. Hampton*, 425 U.S. 484 (1976); *United States v. Russell*, 411 U.S at 431-32. This is just such a case.

It complements the entrapment defense in that entrapment focuses on the defendant's subjective intentions, while outrageous conduct focuses on the objective behavior of government agents. *United States v. Garza-Juarez*, 992 F.2d 896 903 (9th Cir.1993). Under the "extremely high standard" of this doctrine, an indictment should be dismissed "only when the

3

government's conduct is so grossly shocking and so outrageous as to violate the universal sense of justice." Id. (quoting *United States v. Ramirez*, 710 F. 2d 535, 539 [9th Cir.1983]).

Here the government was the sole "creative inspiration" for the illegal transaction, *cf. United States v. So*, 755 F. 2d 1350, 1353 (9th Cir.1985), and as such there is a basis for a finding of outrageous conduct. The defendant owed a debt to an informant and that person proposed a drug deal so that the defendant could eliminate the debt. The "deal" (the crime) would never have happened but for the informant. Indeed, the while conspiracy is, of course, a crime no actual substantive crime could ever have been completed here even were there no informants, as there is no proof the defendant could ever get 1000 kilograms of cocaine. And the defendant's role here was "bookended" by informants on both sides of the deal.

Similarly, in *United States v. Twigg*, 588 F.2d 373 (3d Cir.1978), a DEA informant suggested to defendant they start a "speed" laboratory. The DEA supplied about 20% of the needed glassware, and the indispensable chemical ingredient, P-2-P. The informant, not the defendant, purchased the other supplies and equipment. And the informant, not the defendant, supplied the necessary expertise and actually ran the lab. Finally, the government even provided an isolated farmhouse in which the laboratory could be set up. Ultimately, the DEA arrested defendant as he left the lab with the drugs he and the informant had produced. The Third Circuit found these facts to present a case of outrageous government conduct. Here, the defendant was similarly in the midst of a situation that only existed because of informants on both ends and, unlike in *Twigg*, there was not even any drugs or money or laboratory or anything other than talk.

In determining whether to order a hearing the court ought to assume that the facts as alleged by the defendant are true. *United States v. Westerdahl*, 945 F.2d 1083, 1086 (9th Cir. 1991).

Defendant requests that, at a minimum, the Court grant an evidentiary hearing to more fully examine and expose the outrageous government misconduct in this case. Such a hearing is required where, if the Court finds the facts as alleged by defendant to be true that dismissal would be the appropriate remedy. *See United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir.1980).

## II.     THE GOVERNMENT SHOULD BE ORDERED TO TURN OVER BRADY AND GIGLIO MATERIAL

The defense does not have access to what is known by us to be information about serious misconduct committed by the informants in this case. The defense alleges that this misconduct is so outrageous that dismissal is justified. However, even if the Court disagrees with that view, the information about Patino and Alzate surely amounts to *Brady* and *Giglio* material that ought to be turned over to the defense. The defendant has a constitutional right to explore the informants' bias and credibility on cross-examination. *Giglio v. United States*, 405 U.S. 150 (1972); *Giles v. Maryland*, 386 U.S. 66 (1967); *Napue v. Illinois*, 360 U.S. 264 (1959) (denial of due process occurred where prosecutor failed to correct prosecution witness who testified perjuriously that he had received no promise of consideration in exchange for his testimony). *See also Villaromen v. United States*, 184 F.2d 261, 262 (D.C. Cir. 1950) ("bias of a witness is always relevant"). In addition to disclosing exculpatory evidence, the government is required to disclose evidence useful for impeachment purposes. *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)(citing *Giglio*, 405 U.S. at 154).

There is no set time for the government's *Brady* or *Giglio* disclosures—such information must be disclosed "in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial." *Rittweger*, 524 F.3d 171, 180 (2d Cir. 2008)(citations omitted). The unique circumstances of this case, where the defense has persuasively shown that the DEA is acting in league with murderous informants and is actively protecting them requires disclosure now.

6

### III. THE COURT SHOULD REQUIRE THE GOVERNMENT TO DISCLOSE ANY EVIDENCE IT INTENDS TO INTRODUCE PURSUANT TO RULE 404(B) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Evidence may be admitted under Federal Rule of Evidence 404(b) for a number of proper purposes including: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Rule 404(b) is a rule of inclusion, rather than of exclusion. *See Huddleston v. United States*, 485 U.S. 681 (1988). However, such evidence must meet the standards for admissibility.

Evidence of other bad acts is properly admitted if four requirements are met: (1) the evidence is offered for a proper purpose under Fed.R.Evid. 404(b); (2) the evidence is relevant under Fed.R.Evid. 401; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Fed.R.Evid. 403; and (4) the district court, upon request, instructs the jury to consider the evidence only for the case for which it was admitted. *United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001).

We simply ask that the Government be required to inform the defendant and the Court sufficiently in advance of trial what, if any, such evidence it proposes to introduce so that the defense may have a chance to challenge its admissibility and so that the Court may rule in advance of trial.

## CONCLUSION

For the foregoing reasons, we ask your Honor to dismiss the indictment or, in the alternative, to order that a hearing be held into the government's outrageous conduct in this case, and for an order requiring disclosure of evidence and for any other relief this Court deems just and proper.

Dated: New York, New York
November 28, 2016

ALEXEI SCHACHT
ATTORNEY AT LAW

s/ Alexei Schacht

Alexei Schacht
123 West 94th Street
New York, NY 10025
(646) 729-8180
alexei@schachtlaw.net

*Attorneys for Defendant Jose Toro-Naranjo*